In re GRAND JURY PROCEEDINGS IN the MATTER OF Jeffrey FINE.

Appeal of UNNAMED GRAND JURY TARGET.

No. 81–3019
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

March 20, 1981.

Richard M. Gale, Michael A. Masin, Miami, Fla., for appellant.

John Volz, U. S. Atty., Patrick Fanning, Asst. U. S. Atty., New Orleans, La., for United States.

Julian R. Murray, Jr., New Orleans, La., for Fine.

Before CHARLES CLARK, REAVLEY and WILLIAMS, Circuit Judges.

REAVLEY, Circuit Judge:

The United States sought an order from the district court to compel grand jury testimony from attorney Jeffrey Fine. An unnamed client of Fine's, a target of the grand jury investigation, intervened in the proceedings to prevent Fine from being forced to reveal the client's name. The district court granted the motion to compel, and the unnamed target appealed from that order. We vacate the order and remand for further proceedings.

I. The Background Facts

This appeal grows out of the government's efforts to ascertain the ownership of a motor vessel known as the NORDAK-RUM, which was used to smuggle between 50 and 75 tons of marijuana into Louisiana in June 1979. The ship was found, scuttled and burning, off the Louisiana coast. The registered owner of the NORDAKRUM is an offshore corporation by the name of Labol Investments (Labol). Labol was formed by a parent company known as Curacao International Trust Company (Curacao), a Netherland Antilles corporation. Curacao apparently is in the business of forming and servicing private offshore corporations, and is not a subject of this investigation. Curacao formed Labol at the re-

quest of attorney Jeffrey Fine, acting on behalf of the unnamed client, the appellant in this case and a main target of the grand jury investigation. Mr. Fine testified that he instituted the formation of Labol and had no professional duties relating to the purchase of the NORDAKRUM or its subsequent uses. Curacao's records indicate Labol has been entirely dormant since its formation.

Independent government investigation established that the NORDAKRUM had been previously purchased from a Florida yacht dealer for $250,000 cash. The dealer accepted the cash in a suitcase at a restaurant from a person who gave a name that later proved to be fictitious. The unknown purchaser instructed the yacht dealer to have the NORDAKRUM registered in the name of Labol, and the dealer implemented those instructions. This shady transaction occurred about six months after Labol had been formed in the Netherland Antilles. The yacht dealer apparently is not under further investigation, and the government claims to be at a virtual dead end in its efforts to find out who owned the NORDAKRUM and dictated its movements in June 1979—except, of course, for the information that Fine has about the formation of Labol.

Fine was called as a witness before a grand jury impanelled in October 1979, but he refused to reveal the name of the client at whose request Labol was formed. On July 2, 1980, the government filed a motion to compel testimony, but hearings were not held until December 1980 and January 1981. On January 14, 1981, Fine's unnamed client filed a motion to intervene and a motion to quash service of the subpoena on Fine. The district court granted the motion to intervene and then required the government to make a *prima facie* showing that Fine could not invoke the attorney-client privilege because the professional relationship was intended to further a criminal enterprise. The government relied upon the short amount of time that elapsed between the formation of Labol and the purchase of the

NORDAKRUM, as well as the suspicious events surrounding the purchase itself, to show that the formation of Labol was part and parcel of a criminal enterprise that eventuated in the use of the NORDAKRUM to smuggle marijuana. The district court accepted this as an adequate *prima facie* showing and granted the motion to compel Fine's testimony.

The unnamed client then filed a notice of appeal of this order, as well as petitions for a writ of mandamus or a writ of prohibition. We imposed a stay upon the order of the district court pending further action. We have earlier denied the petitions for writs of mandamus or prohibition [1] because such writs are reserved for only the most extraordinary cases, or where the error of the district court is clear and indisputable. *Miller v. Connally*, 354 F.2d 206 (5th Cir. 1965). Neither standard was met in this case. But we now face an appeal, which need not meet such an exacting standard if the order of the district court is itself appealable. Accordingly, we turn first to that jurisdictional question.

## II. Appealability of the Order

■ The general rule is that an order compelling testimony or denying a motion to quash a subpoena is not appealable, based on the reasoning that the expedient administration of criminal justice is best served by putting the person who seeks to resist the subpoena to a choice between compliance or first litigating his claims in contempt proceedings. If the party chooses to risk contempt, the contempt citation is immediately appealable and thus provides an opportunity for appellate review of the district court order. *United States v. Ryan*, 402 U.S. 530, 533, 91 S.Ct. 1580, 1582, 29 L.Ed.2d 85 (1971).

The Supreme Court has recognized that this reasoning does not hold as firmly when the subpoenaed party is one who has no direct and personal interest in the suppression of the information desired by the grand jury. Such a party would be unlikely to risk a contempt citation in order to allow

1. The stay remained in effect to preserve the issue presented on appeal.

immediate review of the district court order compelling testimony that will injure only a third party. *Perlman v. United States*, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918). In such circumstances, the order of the district court is considered final as to the injured third party who is otherwise powerless to prevent the revelation. *Id.* at 13, 38 S.Ct. at 419.

The *Perlman* exception to the general rule was confirmed in *United States v. Nixon*, 418 U.S. 683, 691, 94 S.Ct. 3090, 3099, 41 L.Ed.2d 1039 (1974), and has been followed by at least four Courts of Appeals. *See, e.g., In Re Berkley and Company, Inc.*, 629 F.2d 548, 550–52 (8th Cir.1980); *In Re Matter of Grand Jury Applicants*, 619 F.2d 1022, 1024–26 (3rd Cir.1980); *In Re Grand Jury Investigation of Ocean Transportation*, 604 F.2d 672, 673–74 (D.C.Cir.), *cert. denied*, 444 U.S. 915, 100 S.Ct. 229, 62 L.Ed.2d 169 (1979); *Velsicol Chemical Corp. v. Parsons*, 561 F.2d 671, 673–74 (7th Cir.1977), *cert. denied*, 435 U.S. 942, 98 S.Ct. 1521, 55 L.Ed.2d 538 (1978). The Second Circuit refused to apply the *Perlman* exception in an appeal by the Commodity Futures Trading Commission (CFTC) of an order compelling deposition testimony from an assistant administrator of a regional office of the CFTC, based on a claim of government privilege. The CFTC had directed the employee not to testify. *National Super Spuds, Inc. v. New York Mercantile Exchange*, 591 F.2d 174, 176–82 (2d Cir.1979).[2] The First Circuit subsequently relied heavily upon the *Super Spuds* opinion to deny the right of appeal in a case that is virtually identical to the one before us now. *In Re Oberkoetter*, 612 F.2d 15, 16–18 (1st Cir. 1980).

■ The exact question is one of first impression in this circuit: may a client-intervenor take advantage of the *Perlman* exception to appeal an order compelling testimony from the client's attorney? The factual situation before us certainly fits the outlines of the *Perlman* exception. An attorney is subpoenaed to give testimony that is subject to a privilege or interest belonging to a third party client. The client is powerless to resist the subpoena personally and put his alleged privilege to the test of a contempt proceeding, and he will lose all right of appeal on that issue if the attorney does not choose to assume such a risk.

The general rule, that orders compelling testimony are non-appealable, is dictated by consideration for the expediency of the administration of criminal justice. *Ryan*, 402 U.S. at 533, 91 S.Ct. at 1582; *Cobbledick v. United States*, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed.2d 783 (1940). The *Perlman* exception was carved out when the general rule was found inapplicable because the subpoenaed party could not be expected to risk a contempt citation in order to protect the interests of a powerless third party. The Second Circuit opinion in *In Re Oberkoetter*, 612 F.2d at 18, reasoned that the client-intervenor should not be able to appeal because a "stouthearted" attorney might be willing to risk a contempt citation to protect his client's interest. Maybe so and maybe not. The Code of Professional Responsibility allows, but does not command, an attorney to reveal client confidences when "required by law or court order." DR 4–101(c)(2). We suspect that the willingness of a lawyer to protect a client's privilege in the face of a contempt citation will vary greatly, and have a direct relationship to the value of the client's business and the power of the client in relation to the attorney. We are reluctant to pin the appealability of a district court order upon such precarious considerations. Moreover, there is a paradoxical element in even looking for indications of the lawyer's intent. If the attorney will submit to a contempt citation rather than testify, the efficient administration of justice is best served by hearing the client-intervenor's appeal immediately, rather than wait for an appeal of the contempt judgment against the attorney. If the attorney will testify rather than risk contempt, the client-intervenor's appeal is most certainly proper because there will be no later opportunity to appeal and the order is definitely "final" as to the client.

**2.** See note 3 below.

Although we cannot say that attorneys in general are more or less likely to submit to a contempt citation rather than violate a client's confidence, we can say without reservation that some significant number of client-intervenors might find themselves denied all meaningful appeal by attorneys unwilling to make such a sacrifice. That serious consequence is enough to justify a holding that a client-intervenor may appeal an order compelling testimony from the client's attorney.[3] The Fifth Circuit has so held when the government was the third party that would be damaged by a second party's disclosure of privileged information. *See, e.g., Carr v. Monroe Manufacturing Company*, 431 F.2d 384, 387 (5th Cir.1970). If the price of protecting the right of appeal of client-intervenors is an occasional frivolous appeal for the sake of delay,[4] we will process such appeals with all the expediency their posture merits. The issues of fact and law related to attorney-client privilege are rarely complex and may be disposed of without oral argument in nearly all cases.

We hold that the order of the district court is a final decision in relation to the unnamed client-intervenor and is, therefore, appealable under 28 U.S.C. § 1291. *Perlman v. United States*, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918).

### III. The Attorney-Client Privilege

▮ The attorney-client privilege exists to protect confidential communications between a lawyer and his client on matters that relate to the legal interests of society and the client. But that purpose is not served if the professional relationship is secured to further present or intended *illegal* activity, regardless of whether the attorney knows his client's true motivations. If there is a prima facie showing that the professional relationship was intended to further a criminal enterprise, the privilege does not exist. *United States v. Hodge and Zweig*, 548 F.2d 1347, 1354 (9th Cir.1977). *See Clark v. United States*, 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933) (*dicta*). The district court order found that such a showing was made in this case, and we now review that finding.

The district court relied upon the definition of prima facie contained in *Black's Law Dictionary* (4th ed.1968): "[s]uch as will suffice until contradicted and overcome by other evidence . . . . [a] case which has proceeded upon sufficient proof to that stage where it will support finding if evidence to contrary is disregarded." The term could be defined in a variety of ways, and we find this definition adequate.

▮ Fine testified at an evidentiary hearing granted by the court that his professional responsibilities for the unnamed client related only to the establishment of Labol and continuing representation as Labol's resident domestic agent. He knew nothing of the purchase of the NORDAKRUM or its subsequent uses, nor did he have any indication that the vessel actually belonged to Labol. The government introduced no contrary evidence.

The shady circumstances surrounding the NORDAKRUM's purchase clearly indicate

---

3. Our reasoning applies only to the normal attorney-client relationship, and would not extend to situations where the client will not lose meaningful appeal of the issue or where the client exercises more direct control and responsibility for the actions of the attorney. We read the Second Circuit's opinion in *National Super Spuds*, 591 F.2d at 176–81, to be supportive of this approach and not in conflict with our basic analysis. In that case, the party compelled to testify was an employee of the Commodities Future Trading Commission (CFTC), the third party asserting a privilege, and acted on advice of CFTC counsel. The court noted that in such a situation "citation for civil contempt without any other immediate sanction pending prompt application for review will normally suffice." *Id.* at 180. The court further speculated that sanctions might have been directed to run against the CFTC Chairman or Commission members who directed the employee to resist the court order. *Id.* at 180 n.9. These observations are made to show that a variety of other results and remedies are available in cases arising outside of the standard attorney-client relationship, and we do not now decide issues of appealability in those more unique cases.

4. We do not expect to be deluged by these appeals, since this is the first reported case in which we have been presented with the issue.

that criminal activity was afoot by the time of that transaction. But there is no connection between the purchase of the vessel and the formation of Labol other than the facts that (1) the two events took place within six months of each other and (2) the stranger who purchased the NORDAKRUM directed that it be registered in the name of Labol. As a matter of law, these two facts alone are inadequate to serve as the basis of a prima facie showing that Labol was initially formed to further a criminal enterprise. These facts may support a strong suspicion, which is often enough for police and prosecutors, but it is not enough for courts. *In Re Grand Jury Proceedings*, 600 F.2d 215, 218–19 (9th Cir.1979). We must vacate the order of the district court.

■ But that does not entirely dispose of the question whether Fine must testify before the grand jury. It is well established that "[t]he identity of a client is a matter not normally within the privilege, *Frank v. Tomlinson*, 351 F.2d 384 (5th Cir.1965), *cert. denied*, 382 U.S. 1028, 86 S.Ct. 648, 15 L.Ed.2d 540 (1966), nor are matters involving the receipts of fees from a client usually privileged." *United States v. Ponder*, 475 F.2d 37, 39 (5th Cir.1973). *See also In Re Grand Jury Proceedings*, 517 F.2d 666 (5th Cir.1975). The client's name and fee arrangements become privileged communications only if disclosure "would implicate that client in the very criminal activity for which legal advice was sought." *Hodge*

*and Zweig*, 548 F.2d at 1353. *Accord, In Re Grand Jury Proceedings*, 517 F.2d at 671–72.[5]

■ The professional relationship between Fine and his client either was formed to further a criminal enterprise or it was legitimate and independent. Mr. Fine has testified that it was legitimate and independent, and the government has failed to make a contrary prima facie showing. The name of the client and the fee arrangement are not privileged because the evidence is that Mr. Fine was engaged only to form and maintain Labol in a legitimate manner, and no criminal liability threatens the unnamed client for activities pertaining to that legitimate, independent, professional relationship.[6]

The order of the district court is VACATED, as is the stay imposed by this court, and the matter is REMANDED to the district court for further proceedings consistent with this opinion.

---

5. The Fifth Circuit precedent generally uses broader language, that the name and fee arrangement are privileged if their disclosure would lead to conviction for a criminal offense. But the panel specifically adopted the rationale of the famous Ninth Circuit case, *Baird v. Koerner*, 279 F.2d 623 (9th Cir.1960), and the *Baird* case is based upon the exception as more specifically and narrowly delineated by the Ninth Circuit in the passage quoted from *Hodge and Zweig*, 548 F.2d at 1353. *See also In Re Grand Jury Proceedings*, 600 F.2d 215, 218 (9th Cir. 1979).
   Furthermore, the narrower language used in the Ninth Circuit is in keeping with this circuit's view that the attorney-client privilege should be confined within the narrowest limits consistent with its purpose. *United States v. Pipkins*, 528 F.2d 559, 562–63 (5th Cir.1976). The *Baird* exception to the general rule is de-

signed to protect the identity of clients who seek legal advice as to *past* activities that may result in criminal prosecution. If a legitimate legal relationship is an evidentiary lead to *subsequent, unrelated* criminal activity, no substantial interest of society is served by protecting the name of the client and fee arrangement involved in the legitimate activity. If the legal relationship is illegitimate because it is *related* to subsequent criminal activity, there is even less reason to protect the name of the client.

6. We acknowledge that, if the formation of Labol *was* directly related to a criminal enterprise, the unnamed client is in a classic Catch-22: he must admit the connection of the two activities in order to make his name privileged information, but that very admission destroys the attorney-client privilege altogether.