In re GRAND JURY PROCEEDINGS.

In the Matter of Andrew C. PAVLICK.

United States of America, Appellant.

No. 80–3742.

United States Court of Appeals,
Fifth Circuit.*
Unit A

July 2, 1982.

Michael Schatzow, Veta M. Carney, Asst. U. S. Attys., New Orleans, La., Mervyn Hamburg, Appellate Sec., Crim. Div., U. S. Dept. of Justice, Washington, D. C., for appellant.

Andrew C. Pavlick, Miami, Fla., Louis B. Merhige, New Orleans, La., for appellee.

Before BROWN, CHARLES CLARK, GEE, RUBIN, GARZA, REAVLEY, POLITZ, RANDALL, TATE, SAM D. JOHN-

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

SON, WILLIAMS, and GARWOOD, Circuit Judges.

GEE, Circuit Judge:

This case is about the attorney-client privilege. It concerns whether, on the facts presented, a lawyer can refuse to disclose the identity of one who paid fees and furnished bond money for third persons. The court below sustained his refusal to do so, and a panel of our court affirmed. 663 F.2d 1057. Sitting en banc, we vacate the panel opinion finally and reverse.

Willis, Love, and Pieser, apprehended on a shrimper with eighteen tons of marihuana, were tried and convicted in the Eastern District of Louisiana. Appellee Andrew C. Pavlick, a Miami practitioner, represented them. Thereafter each was granted immunity and brought before a grand jury investigating the transaction. Each waived the attorney-client privilege and testified that he knew nothing of where the funds came from that were used to post bond and compensate Pavlick. Willis added that when he was recruited for the drug-smuggling venture, he was promised that he would be "taken care of" if arrested. At his bond hearing, Pavlick, whom Willis had never seen or heard of before, appeared, introduced himself, stated that an unidentified person had put up funds for him to represent the three and secure their release on bond, and proceeded to do so.

When the grand jury called Pavlick, he refused to identify the smugglers' benefactor, maintaining that he also was a client and invoking the attorney-client privilege. Specifically, Pavlick engaged in the following exchange with the court below:

Q You were retained by somebody who told you to represent these people?

A And him and someone who was also worried about his own culpability.[1]

For several reasons, we conclude that in these circumstances the benefactor's identity may not be concealed.

■ We have long recognized the general rule that matters involving the payment of fees and the identity of clients are not generally privileged. *In re Grand Jury Proceedings (United States v. Jones)*, 517 F.2d 666 (5th Cir. 1975); *see* cases collected *id.* at 670 n.2. There we also recognized, however, a limited and narrow exception to the general rule, one that obtains when the disclosure of the client's identity by his attorney would have supplied the last link in an existing chain of incriminating evidence likely to lead to the client's indictment. In so holding, we expressly noted that our decision rested on the peculiar facts of that case and "should not be taken as any indication of how we would decide a similar question if the inculpatory value of sought-after testimony were less obvious or largely attenuated." *Id.* at 675. Among those "peculiar facts" was that the six attorneys drawn before the grand jury in *Jones* represented a generous portion of the criminal law bar of the lower Rio Grande Valley area, and the project was a rather broad attempt to canvass that portion for information detrimental to certain of its clients: that each had paid an attorney or attorneys amounts greater than his reported gross income during the year of payment. This and other features distinguish *Jones* from our case, including that the identity sought here was by no means the last link in any chain of inculpatory events or transactions, rather the contrary.[2]

1. We assume for purposes of this opinion, but do not hold, that this response affords a sufficient basis for the trial court's conclusion that the benefactor was Pavlick's client, too.

2. As the government attorney advised the court:

MR. FONSECA: .... In this case, I have no information as to who paid Mr. Pavlick these fees. This man may not be involved in the conspiracy, the person who paid him, you know, he may not be involved in the conspir-

acy of the three convicted defendants. There is a strong possibility that he was involved; otherwise; he would not have placed himself in a position of seeking legal representation for these three individuals and for paying their fees. But, all we are obtaining is this person's name, just obtaining his name would not give us, necessarily the evidence to indict that person as was the case in the Jones case. The mere identification of the defendant, of itself, of the person paying the money, of itself, would give the government a

The critical distinction, however, is the presence and redemption of the outstanding promise—the understanding by which in part the three sailors were recruited—that if arrested they would be "taken care of." In this respect our case closely resembles that of *United States v. Hodge & Zweig*, 548 F.2d 1347 (9th Cir. 1977). There, as noted in the dissent from our panel opinion,[3] the court held that once the government made a prima facie showing that the attorney was retained in order to promote intended or continuing criminal or fraudulent activity, the privilege could not be asserted. *See Clark v. United States*, 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933); *United States v. Friedman*, 445 F.2d 1076, 1086 (9th Cir. 1971). In *Hodge & Zweig*, as here, the government made such a prima facie showing by presenting evidence that an integral part of the conspiracy was the agreement by participants to furnish bail and legal expenses for conspirators who were apprehended by law enforcement officials. Thus, though the appellate court determined that the existence of the privilege was established, it refused to countenance its assertion:

> Our inquiry is not at an end, however. Because the attorney-client privilege is not to be used as a cloak for illegal or fraudulent behavior, it is well established that the privilege does not apply where legal representation was secured in furtherance of intended, or present, continuing illegality. *United States v. Friedman*, 445 F.2d 1076, 1086 (9th Cir. 1971); *see Clark v. United States*, 289 U.S. 1, 15, 53 S.Ct. 465 [469], 77 L.Ed. 993 (1933); *O'Rourke v. Darbishire*, [1920] A.C. 581, 604 (Eng.) (per Vixcount Finlay); 8 J. Wigmore, *supra*, § 2298. The crime or fraud exception applies even where the attorney is completely unaware that his advice is sought in furtherance of such an improper purpose. *United States v. Friedman*, 445 F.2d at 1086; *see Clark v.*

*United States*, 289 U.S. at 15, 53 S.Ct. 465 [at 469].

> .... The guilty pleas further demonstrate that as an integral part of the conspiracy the participants agreed to furnish bail and legal expenses for conspirators who might be apprehended by law enforcement officials. Presumably, such an agreement was designed to hinder any criminal drug prosecution arising out of the conspiracy; as such, the agreement constituted part of the consideration for engaging in the conspiratorial activity.

> In light of the above, we conclude that a prima facie case exists that payments to appellants, if any, made during the years 1970, 1971, and 1972 by and on behalf of Sandino were made pursuant to the conspiratorial agreement and thus in furtherance of the continuing drug conspiracy. We therefore hold that disclosure of the information requested in the IRS summons is required.

*United States v. Hodge & Zweig*, 548 F.2d at 1354–55 (footnote omitted).

Like our brethren of the Ninth Circuit, we decline to permit the promise of legal services to be made a fringe benefit for use in recruiting criminal conspirators. To draw the cloak of privilege across such an arrangement would be to shield the performance of an undertaking on which, in part, the conspiracy was based. In such circumstances, the act of furnishing bail and counsel was an act done in furtherance of the illegal scheme itself, carried out at a time when its beneficiaries were hors de combat to be sure, but exactly as contemplated. Trust in the undertaking was what gave it value; had it been bilked, the promise and like outstanding ones would have been rendered valueless. Thus the criminal enterprise itself was served by its performance.

■ Lawyers' skills may not be employed, even without their knowledge, in

---

tax case in the Jones case, because they already had the fees, and all they needed was the name.

THE COURT: It might well give you a conspiracy case in this matter.

MR. FONSECA: It might lead to it.

3. 663 F.2d at 1062–65, from which we henceforth borrow liberally without further attribution.

furthering crimes. The transaction by which Mr. Pavlick delivered legal services pursuant to the conspirators' prior agreement stands on no different legal footing than had he been employed to deliver any other portion of the conspiracy's fruits. Even if we conceded an attorney-client privilege as existing between him and, say, one who gave him loot to deliver, it would not protect the giver's identity. No more should it do so here. We therefore adopt the holding of the Ninth Circuit in *Hodge & Zweig* as our own: where the government makes a prima facie showing that an agreement to furnish legal assistance was part of a conspiracy, the crime or fraud exception applies to deny a privilege to the identity of him who foots the bill—and this even though he be a client of the attorney and the attorney unaware of the improper arrangement. Such an agreement, of course, need only be an effective one, need not be express, and might in a proper case be found to arise even from a custom or a prior course of conduct toward other apprehendees. Our case is an easy one, the agreement being express and Mr. Pavlick's services having rather clearly been furnished in redemption of it. The government's motion to compel disclosure should have been granted.

REVERSED.

ALVIN B. RUBIN, Circuit Judge, joined by CHARLES CLARK (first two paragraphs only) and RANDALL, Circuit Judges, concurring in the result:

Because no attorney-client privilege between Mr. Pavlick and the anonymous fee-payer has been established, Mr. Pavlick must answer the questions put to him, and I see no reason to discuss whether or not he was employed to fulfill a promise made as part of a conspiracy. The party who invokes the attorney-client privilege has the burden of establishing both the existence of an attorney-client relationship and the confidential nature of the communication.[1] *See United States v. Flores*, 628 F.2d 521, 526 (9th Cir. 1980); *United States v. Kelly*, 569 F.2d 928, 938 (5th Cir.), *cert. denied*, 439 U.S. 829, 99 S.Ct. 105, 58 L.Ed.2d 123 (1978). Even if the anonymous fee-payer sought personal legal advice from Mr. Pavlick and became his client in regard to the matters about which he sought counsel, he was not Mr. Pavlick's client in the matter for which the fee was paid and about which Mr. Pavlick was interrogated. In that matter, Mr. Pavlick's clients were Willis, Love, and Pieser, each of whom waived the attorney-client privilege. There is neither any contention nor the slightest evidence that Mr. Pavlick was retained to represent Mr. Anonymous jointly with these three. There was, therefore, no attorney-client relationship between the fee-payer and the lawyer with regard to the matter about which Mr. Pavlick was questioned.

Not only did Mr. Pavlick fail to establish an attorney-client relationship with Mr. Anonymous in this matter, he also failed to present evidence that the communication between him and Mr. Anonymous concerning payment of a fee to represent Willis, Love, and Peiser was for the purpose of obtaining legal advice for Mr. Anonymous. As we have seen, the attorney-client privilege shields only those communications made for the purpose of securing such advice. *See United States v. Kelly*, 569 F.2d

---

1. Professor Wigmore characterizes the rule as follows:

> 8 J. Wigmore, Evidence in Trials at Common Law § 2292, at 554 (J. McNaughton rev. 1961) (footnote omitted).
> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

We have adopted this definition. In *United States v. Ponder*, 475 F.2d 37, 39 (5th Cir. 1973), we said: "The privilege applies to communications between lawyer and client, and, to come within the scope of the privilege, an attorney must show that the communication was made to him confidentially, in his professional capacity, for the purpose of securing legal advice or assistance." *Accord, In re Grand Jury Proceedings (United States v. Jones)*, 517 F.2d 666, 670 (5th Cir. 1975).

at 938 ("the communication relates to a fact of which the attorney was informed by his client . . . for the purpose of securing primarily either an opinion on law or legal advice or assistance in some legal proceeding"); 8 J. Wigmore, *supra* at § 2310 ("The test is, therefore, not whether the fact or the statement is actually necessary or material or relevant to the subject of the consultation, but whether the statement is made as *a part of the purpose of the client* to obtain advice on that subject.").[2]

The majority opinion paints with a broad brush and its background suggests answers to questions we should not now decide. Although the government now seeks only to learn the identity of Mr. Anonymous, as I read the majority opinion, if the predicate facts are established, even Willis, Love and Peiser could not claim an attorney-client privilege. Thus, if Mr. Pavlick had been retained by Mr. Anonymous to represent Willis, Love, and Pieser jointly, none of them could claim the privilege either for the identity of Mr. Anonymous or for any other communications made in the conversation.[3] Accepting its rationale as the basis for requiring disclosure of the identity of Mr. Anonymous, it is difficult to see why the same rationale would not require stripping any privilege from the entire relationship.

When confronted with a case in which there might be an attorney-client privilege but for the taint of illegality, I would decide whether the rationale of *United States v. Hodge and Zweig*, 548 F.2d 1347 (9th Cir. 1977), should be extended. That case involved "legal representation . . . secured in furtherance of *intended, or present, continuing illegality.*" It held that the "party seeking disclosure . . . must make out a prima facie case that the attorney was *retained in order to promote intended or continuing criminal or fraudulent activity.*" 548 F.2d at 1354 (emphasis added).[4]

In the instant case, however, there is no indication that the legal representation was secured in furtherance of "intended, or present, continuing illegality." The *illegal* acts had already taken place, even if the eventual procurement of counsel is viewed as the final overt conspiratorial act. The importation of marijuana had been completed, and Mr. Pavlick was retained after the arrest of the three sailors.

Mr. Pavlick's assertion of the shield of privilege for Mr. Anonymous does not require us to apply *Hodge and Zweig* to this case, let alone extend it to every case in which the retaining of a lawyer is promised to a criminal as one of the benefits *offered* to induce him to join in a crime.

GARWOOD, Circuit Judge, concurring.

I concur in the result and in all of Judge Gee's cogent opinion except in so far as it implies that Pavlick may be compelled to reveal the identity of the person furnishing the bond and attorneys' fees money for "the three" *because* such information would not be sufficiently incriminatory of that individual. Given the facts showing that such individual was redeeming a promise made to induce "the three" to join the criminal conspiracy, it seems clear that the information was highly incriminatory and that was precisely why the government wanted it.

---

2. *See* Saltzburg, Communications Falling Within the Attorney-Client Privilege, 66 Iowa L.Rev. 811, 823 (1981), in which a distinction is drawn between retaining a lawyer to give legal advice and having him simply perform an act as an agent.

3. Consider, as another example, a corporation whose president is named as a codefendant with the corporation in an indictment charging an antitrust conspiracy. The corporation retains counsel to represent both. The president later waives the attorney-client privilege, asserting that the corporation's board of directors had agreed before the alleged antitrust course

was begun that, if the president were ever charged with an antitrust violation, the corporation would retain counsel for him. I would intimate no opinion concerning the effect of this agreement, which might be viewed as a fringe benefit for use in recruiting or continuing the services of a criminal conspirator.

4. In *Hodge and Zweig* the information sought concerned transactions during 1970, 1971, and 1972, and the conspiracy began "at least as early as June 1971 and ended on November 21, 1974." *Id.*

I also observe, as an additional reason supporting the result reached by Judge Gee, that Pavlick was asked merely the identity of the person who paid him to represent and bond "the three"; he was not asked whether such person was his client (rather he volunteered that information), or anything such person said to him as his client; nor was Pavlick ever asked the identity of any client or whether any specific person was a client of his (other than "the three"). While perhaps such circumstances standing alone should not be decisive in requiring disclosure, in my opinion they become so when combined with the showing that such individual was redeeming a promise made to induce "the three" to join the criminal conspiracy. Plainly, if our Mr. (or Ms.) X had given the bond money to non-lawyer B to take to "the three" in redemption of the referenced promise, B could be made to identify X. The result should not be otherwise because X chooses a lawyer to be the carrier and at the same time also asks the lawyer to represent him (or her).

I also agree generally with the comments in Judge Rubin's concurring opinion pointing out there is no showing that requiring Pavlick to answer the question posed will disclose any communication between Pav-

lick and Anonymous made for the purpose of obtaining legal advice from Pavlick for his representation *of Anonymous*. However, I believe Judge Rubin reads the majority opinion too broadly. I believe it should be understood in the light of the question it properly addresses: May Pavlick be required to answer the question who furnished him the money to bond and represent "the three"? As I read it, the majority does not address Pavlick's obligation to answer questions as to the content of communications from Anonymous or Pavlick in furtherance of Pavlick's legal representation *of Anonymous*.

POLITZ, Circuit Judge, with whom TATE and WILLIAMS, Circuit Judges, join, dissenting:

I dissent. Despite the appearance of limited application, today's decision begins the process of the demise of the attorney-client privilege in this circuit.

The majority notes that it assumes, for purposes of the opinion, that the anonymous fee payor was Pavlick's client. I find that assumption unnecessary; the factual finding by the district court, albeit based on meager evidence, is not clearly erroneous. Fed.R.Civ.P. 52(a).[1] The en banc court then

---

1. As reflected in his concurrence, Judge Rubin, joined by Judge Clark, concludes that no attorney-client privilege exists between the anonymous fee payor and Pavlick. The government has consistently maintained this position. I am convinced beyond peradventure that the privilege was extant. In *In re Grand Jury Proceedings v. Jones* we listed the basic elements necessary to establish the privilege:

    (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is [the] member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. 517 F.2d at 670. *See also United States v. Kelly*, 569 F.2d 928, 938 (5th Cir.), *cert. denied*,

439 U.S. 829, 99 S.Ct. 105, 58 L.Ed.2d 123 (1978).

In the case at bar, the government challenges the existence of the attorney-client relationship because no proof was offered of the advice requested or legal services performed. Although the record before us leaves a great deal to be desired, it contains adequate proof upon which the district judge properly could base the finding that the privilege came into being.

Pavlick responded to the district court's question—"You were retained by somebody who told you to represent these people?"—by saying "And him and someone who was worried about his own culpability." "And him" logically refers to the client/benefactor. The district court's finding that Mr. Anonymous sought out the legal assistance of Pavlick for himself (or herself) and the trio in jail in New Orleans, passes muster.

The government's contention that the privilege does not attach because there is no evidence in the record that any services were actually performed for the fee payor does not survive close scrutiny. It should be beyond question that once the benefactor told Pavlick about his legal problem, including real or ex-

proceeds to require the attorney to disclose the identity of his client despite the fact that this identification "would yield substantially probative links in an existing chain of inculpatory events or transactions." *In re Grand Jury Proceedings v. Jones*, 517 F.2d 666, 674 (5th Cir. 1975). I find this invasion, indeed destruction, of the attorney-client privilege, unfortunate, unwarranted, and unwise.

One justifiably may be astounded that this case precipitates the need for an apologia of the attorney-client privilege. At this late date, one would expect merely a faint and distant echo of battles long since fought. But that is not the case; the privilege itself is brought to center stage, under the appealing guise of curtailing a peripheral abuse.

"The purpose of the privilege is to encourage clients to make full disclosure to their attorneys," the Supreme Court observed in *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976), further noting that "[a]s a practical matter, if the client knows that damaging information could more readily be obtained from the attorney following disclosure than from himself in the absence of disclosure, the client would be reluctant to confide in his lawyer and it would be difficult to obtain fully informed legal advice." *Id.*

Because disclosure of a client's identity generally does not incriminate the client, an attorney usually may not invoke the privilege and refuse to divulge that information. However, if such disclosure would incriminate the client, the privilege may apply. As we recognized in *Jones*, "Under some circumstances, an attorney must conceal even the identity of a client, not merely his communications, from inquiry." 517 F.2d at 671.

The identity of Pavlick's client, in the context of the factual situation before us, is precisely the type of information the privilege is designed to shield. The person who paid the attorney's fees and bail bond costs for the three arrestees, Willis, Love and Peiser, according to the trial judge, consulted Pavlick concerning his own culpability in the criminal scheme. The government is pursuing the identity of the client/benefactor, candidly informing the court that the identification might lead to his indictment. In essence, the government seeks to base a material and significant part of a criminal charge on information involuntarily furnished by the person's attorney. In my judgment, in the case before us, compelling disclosure of this information constitutes an error of the first magnitude.

The majority would take this case out of the *Jones* exception by a restatement of the *Jones* holding to which I cannot subscribe. The majority announces that the identity of a client is only privileged, under *Jones*, when "disclosure of the client's identity by

---

pected criminal exposure, the privilege came into being. It is imperative that the privilege attach soon after a prospective client has contacted an attorney, and certainly not later than the point at which the person reveals facts tending to establish a criminal exposure. The existence of the privilege cannot be limited to instances in which the attorney-client relationship comes to full fruition by the payment of legal fees and the performance of legal services. If that were required, a person would be compelled to retain the first attorney consulted in order to preserve the privilege. Such a requirement would ignore the reality that during early consultations the lawyer, the client or both may choose not to formalize or continue their relationship. The client may not be able to pay the fee; the attorney may discover some fact which either obliges or persuades him not to accept employment; there may be a personality conflict, or either, for no articulable rea-

son, may decide against formalizing the relationship. As one commentator noted:

> At the inception of the contacts between the layman and the lawyer it is essential that the laymen feel free of danger in stating the facts of the case to the lawyer whom he consults. Even though the lawyer rejects the case and the relation of attorney and client never arose, the usual duties as to privileged communications and conflicting interests should apply. The general principle of law should be, each duty incident to the attorney-client relationship begins as early as is helpful to the effective working of the relationship.

*See L. Patterson & E. Cheatham, The Profession of Law* at 246 (*citing Taylor v. Sheldon*, 172 Ohio St. 118, 173 N.E.2d 892 (1961)). *See generally*, American Bar Association Model Code of Professional Responsibility, Canon 4, EC 4–1, DR 4–101.

his attorney would have supplied the last link in an existing chain of incriminating evidence likely to lead to the client's indictment." Since, according to the majority, the identity of Pavlick's client is not the "last link," it is not protected. *Jones* articulated no such standard. In *Jones*, the government's position on whether the disclosure would lead to an indictment was just as equivocal as the government's position in the case at bar. The government, in *Jones*, asserted: "It is conceivable that there may be income tax violations." 517 F.2d at 673. The *Jones* court, in declining to order disclosure, stated the rule as follows: the identity of a client "should also be protected when so much of the substance of the communications is already in the government's possession that additional disclosures would yield substantially probative links in an existing chain of inculpatory events or transactions." 517 F.2d at 674. This markedly varies from the standard which the majority today applies to Pavlick's client. The government in the case at bar acknowledged exactly what the government in *Jones* acknowledged—that the determination of the identity of the unknown person might lead to his or her indictment. That constituted a sufficient showing in *Jones*; it should suffice here.

The next consideration is whether the identity of Pavlick's client should be divulged under the rationale of the crime or fraud exception to the attorney-client privilege. In *In Re Grand Jury Proceedings in Matter of Fine*, 641 F.2d 199 (5th Cir. 1981) we observed that the purpose of the attorney-client privilege "is not served if the professional relationship is secured to further present or intended *illegal* activity...." *Id.* at 203 (emphasis in original). Recognizing dicta in *Clark v. United States*, 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933), and citing *United States v. Hodge & Zweig*, 548 F.2d 1347 (9th Cir. 1977), we held "[i]f there is a prima facie showing that the professional relationship was intended to further a criminal enterprise, the privilege does not exist." *Id.*

The en banc court today concludes that this prima facie showing was made, a con-

clusion based on evidence that someone assured one or more of the three arrestees that if they were apprehended they would be "taken care of." The majority finds that when the anonymous client consulted Pavlick he did so in acquittance of that promise. The furnishing of bail costs and attorney's fees is thus viewed as "an act done in furtherance of the illegal scheme itself." I cannot concur in that assessment. I do not perceive the undisclosed client's retention of Pavlick, to represent himself and the three smugglers, as an action "to further present or intended illegal activity." When Pavlick was first approached, the marihuana had been seized and the three defendants were in jail. Pavlick was retained to represent the three defendants and the unidentified client for *past* criminal acts. The majority concludes that the very act of contacting Pavlick, because of the prior assurance, was an unprotected act because it ostensibly furthered present or intended illegal activity. I find this extension of the crime or fraud exception ill-advised. I view the consulting of Pavlick as reflecting the undisclosed client's concern about detection for past offenses and as an attempt to secure timely assistance in the event of his apprehension. The record is devoid of proof that Pavlick had prior knowledge of the bail/fee assurance or that the identity of the undisclosed client was sought in connection with any illegal activity occurring after Pavlick was consulted. Therefore, I do not believe the rule announced in *Fine* and *Hodge & Zweig* applies. Today the en banc court adopts an entirely new, unprecedented rule.

The new rule does indeed, as the concurring opinion suggests, paint with a broad brush, outstripping its seeming limited application. The words used suggest that the crime or fraud exception will obviate the privilege only as to the fee payor's identity, "where the government makes a prima facie showing that an agreement to furnish legal assistance was part of a conspiracy." The words belie the rationale. If the crime or fraud exception is applicable, more than client identity is stripped of the privilege— confidences and secrets are also bared. If

in the situation posited by the majority, the attorney can be forced to disclose the identity of the client-payor, what prevents the involuntary disclosure of (1) what the client said, and (2) any other matters coming to the attention of the attorney during the course of representation? The crime or fraud release is not a partial dissolution of the privilege; if the exception applies, the privilege, in all respects, vanishes.

Moreover, the rule adopted by the court today will yield anomalous results. Under our ruling, client X, a member of a drug smuggling conspiracy, may, prior to indictment or arrest, seek legal advice from an attorney about his participation in the criminal operation. If his attorney is subsequently interviewed by the authorities, or brought before a grand jury, the attorney may decline to divulge the name of his client, citing *Jones* and arguing that disclosure of the name would provide a substantially probative link in an existing chain of inculpatory events. Presumptively, the claim of privilege would be honored. However, if X conspires with Y to smuggle drugs and offers to pay attorney fees in the event of an arrest, the attorney consulted by X will be required to disclose at least the identity of X. He will likely also be required to disclose the identity of Y and the conversation with X when the attorney was retained to represent X and Y. I can see no rational basis for such a dramatic difference in the treatment of X in these two situations. In both instances he was involved in drug conspiracies. The court today offers no persuasive predicate for meaningfully distinguishing these two criminal situations. The signs, then, are clear. Soon there will be no distinction. Soon there will be no attorney-client privilege recognized.

The drug traffic is abhorrent. This cancer on our social fabric must be eradicated. The desire to pursue vigorously all suspected participants is understandable and laudatory. Many things may be sacrificed in this effort, but the attorney-client privilege is not, to me, a forfeitable item. This privilege is of such value to our civilized society and system of criminal justice that I must regretfully dissent from today's ruling, and its natural consequence—defense counsel becoming the government's unwilling instrument for the investigation and prosecution of clients for *past* criminal acts. I am convinced that society's momentary gain from this development will be far outdistanced by its ultimate loss.