On Rehearing
COLE, Justice.
This case, as does State v. Green, 493 So.2d 1178 (La.1986), consolidated herewith, involves the scope of La.R.S. 15:475, Louisiana’s statute governing the attorney-client privilege in the criminal law context.
FACTS
The facts of this case are somewhat convoluted since we are presented the question of the scope of the attorney-client privilege in a pre-trial setting. Apparently, Taylor was arrested after a confidential informant’s tip implicated him in the shooting death of a 17-year-old Bossier City youth. The body of the victim was found on the west bank of the Red River. He had been shot once in the head and once in the abdomen with .380 caliber bullets. Police recovered from the scene four other spent bullets and casings, three pellets were .380 caliber and one was .25 caliber.
Taylor was arrested on February 12, 1984.[1] Sometime subsequent to the arrest, police searched his home and truck turning up evidence which linked him to the crime. In addition to the guns and ammunition (.380 caliber) recovered, police learned the unusual assortment of truck tires on the truck matched the distinctive tread pattern found at the scene. Lastly, a radio/tape player, believed to be the victim’s, was found in the house. A Bossier Parish Grand Jury returned a true bill indicting Taylor with first degree murder. Prior to the scheduled date of trial, the state amended the indictment to charge second degree murder.
On the day after his arrest, Taylor met with Attorney Randall Fish in the Bossier City Jail. It is not clear who initially contacted Fish. What is clear is at some time after the interview Fish went to Taylor’s home and retrieved from the attic a Ceska CZ .380 pistol, later determined to be the murder weapon. Fish took the gun to his office and there it remained until January 20, 1986, approximately one week prior to trial. On that date, police, again tipped by an informant, confronted Fish and he surrendered the weapon.
The defense sought to exclude introduction of the gun as well as any and all testimony from Fish concerning the weapon, its location when retrieved or its subsequent discovery by authorities. A hearing was set and on January 22, 1986, a stipulation was entered establishing Fish was Taylor’s attorney at the time of the jailhouse interview. It was agreed an eviden-tiary hearing was avoided thereby and the matter was submitted. The trial court refused to exclude either the gun or Fish’s testimony. The court of appeal affirmed. State v. Taylor, 482 So.2d 210 (La.App.2d Cir.1986). Defendant applied for writs to this Court, see State v. Taylor, 483 So.2d 1007 (La.1986), and on original consideration, this Court granted partial relief ruling the . former defense attorney may not be called as a witness concerning the *535 gun_” Id. Following the state’s request for reconsideration (rehearing), oral arguments and a full opinion, on March 27, 1986, we granted a rehearing and consolidated the case with State v. Green, supra. 485 So.2d 58 (La.1986).
STATE v. GREEN AND THE ATTORNEY-CLIENT PRIVILEGE
This case is controlled by the principles articulated in our decision in State v. Green, 493 So.2d 1178 (La.1986), handed down today. In Green, we held (1) physical evidence connected to the commission of a crime which has been received or recovered by an attorney on account of his representation of a client is not excluded by virtue of the application of the attorney-client privilege and (2) the state may not call to the stand and examine a client’s attorney as to any facts regarding the physical evidence, including its location, retrieval, possession and subsequent delivery to authorities since such matters constitute “information” within the meaning of the term as used in La.R.S. 15:475. To allow the state to elicit information from the attorney to meet its burden of proving authentication (i.e., connection of the physical evidence to the defendant) undermines the purpose of the attorney-client privilege so as to effectively render its principle meaningless. In dicta we noted the attorney-client privilege was not without exception.
Applying Green to this case, the state is not prevented by virtue of the attorney-client privilege from introducing into evidence the gun retrieved from the attic of defendant’s house by his former attorney, Randall Fish. Fish was under an obligation to turn over evidence relevant to a criminal prosecution; and therefore, an exception to the attorney-client privilege exists. Green, supra. The gun is admissible, provided the state lays the proper foundation.
As to the testimony of Fish, he generally is precluded from being called to the stand and testifying.[2] The location of the gun, defendant’s possession prior to its retrieval by Fish and its subsequent release to authorities are all facts which fall normally under the scope of the attorney-client privilege. Green, supra. The state is required to prove, the requisite authentication by other means independent of the attorney’s testimony. Green, supra.
But as we noted in Green, the attorney-client privilege is not without exception. Of import to this case is the following language from the Green opinion:
[SJuffice it to say the privilege does not generally exist:
[[Image here]]
(2) Where the representation is sought to further criminal or fraudulent conduct either past, present or future. See e.g., In Re Grand Jury Proceeding, [680 F.2d 1026 (5th Cir.1982) ]; In Re Grand Jury Proceedings in the Matter of Fine, 641 F.2d 199 (5th Cir.1981); [State v.] Johns, [209 La. 244, 24 So.2d 462 (1946)]; State v. Childers, 196 La. 554, 199 So. 640 (1940); Succession of Bonner, 192 La. 299,187 So. 801 (1939). Here the emphasis should be placed on the client’s actions, since it is the client’s right which is prejudiced. McCormick on Evidence, § 89 (Cleary ed. 3rd). Unilateral acts by the attorney while perhaps constituting violations of criminal law and/or ethical *536 canons generally cannot be held to abrogate the client’s privilege.
Green, supra, at p. 1182 (footnote omitted).
Here we are presented with what may be a conspiracy by Taylor and Fish to secret relevant evidence material to the charges pending. Objectively, what little facts we have tend to support the inference of such a conspiracy. Taylor was arrested on February 12, 1984 at approximately 9:00 p.m. Between then and about midnight police conducted what amounted to a general search of his house, including the attic. The next day Fish was contacted by an unknown party and met with Taylor in his cell. After the interview Fish left and went to Taylor’s house apparently removing the gun at this time. Police conducted a second search some thirteen hours after the original search and failed to discover the gun. It appears Fish removed the gun after the initial search; however, we have no concrete evidence, only inferences and speculation drawn from hearsay. It is an open question whether Fish removed the gun before or after the second search. We feel sufficient cause exists to warrant further investigation into the possibility of a conspiracy between Fish and Taylor.
PROCEDURE RELATIVE TO PROVING A CONSPIRACY
One question left open in Green is the procedure trial courts are to follow in evaluating a claim of attorney-client privilege. Normally, a party asserting the privilege will file a motion in limine.[3] The trial court conducts a hearing and then rales on the merits of the claimed privilege. In the normal situation there is seldom a problem. Where it appears a conspiracy exists between the attorney and the client, problems abound.
How can the party opposing the privilege prove a conspiracy? May the attorney or client be called to testify, or does the privilege apply to prevent further inquiry? If the attorney or the client testifies would the privilege be compromised by publicity associated with an open hearing in a controversial case? What use may be had of the testimony at the hearing assuming the attorney or the client testifies? Recognizing these problems to be real, we feel trial courts should utilize the following procedure. La.C.Cr.P. art. 3 (1967). (The article authorizes a court to adopt procedures consistent with the purpose of the code of criminal procedure in situations where the code is silent.)
When the party opposing the privilege alleges a conspiracy exists between the client and his attorney to engage in illegal activity, the trial court shall conduct a full evidentiary hearing at which the party opposing the privilege has the burden of proving the existence of the conspiracy. Depending on the notoriety of the case, as well as other factors, the trial court has discretion to close the hearing upon motion of either party. See State v. Birdsong, 422 So.2d 1135 (La.1982) (allowing a closed su-pression hearing where it is in the interest of justice, the defendant being required to show actual prejudice from denial of the motion). Upon a prima facie showing of conspiracy the attorney-client privilege is vitiated pending final resolution of the merits of the claimed privilege. See U.S. v. Dyer, 722 F.2d 174 (5th Cir.1983); In Re Grand Jury Proceedings, supra; In Re Grand Jury Proceedings in the Matter of Fine, supra.
At the hearing, both the attorney and client may be called to testify if necessary and the attorney-client privilege may not be interposed as an obstacle to examination. The trial court then determines the merits of the claim of conspiracy as any other *537 question of fact. Such a determination may be by either direct or circumstantial evidence, the latter governed by the general rules applicable to all circumstantial evidence. La.R.S. 15:438 (1981). In the event the hearing is closed, the testimony, if any, shall be sealed and remitted to the proper appellate court in the event appellate review is sought and granted. If the privilege is sustained the testimony may not be used at any subsequent hearing; if it is denied, the testimony may be used as is the case with other relevant testimony.
As we have stated, objectively there appears to be support for a finding of a conspiracy between Taylor and Fish. Based on the record before us we cannot make a determination as to the merits of the claim; therefore, we remand this case to the trial court for proceedings in accordance with the views expressed herein.
DECREE
For the above stated reasons the case is remanded to the trial court for further proceedings in accordance with the views expressed herein.
REMANDED.
DIXON, C.J., dissents.
WATSON, J., dissents and would adhere to the original order of this court.

. Both the trial court and the court of appeal found Taylor’s arrest unlawful since it was based on a three year old warrant. State v. Taylor, 468 So.2d 617 (La. App. 2d Cir.1985). The opinion of the Second Circuit details what was described as "reprehensible” police conduct throughout the case.

, We express some reservation about the existence of an attorney-client relationship under the facts of this case; however, by virtue of the stipulation establishing Fish was acting as Taylor’s counsel at the time of the interview we accept as proven the fact of the relationship. See Emile M. Babst Co., Inc. v. Nichols Const., 488 So.2d 699 (La.App. 1st Cir.1986), and authorities cited therein.
It is not at all clear what prompted the state to stipulate as to the existence of the attorney-client relationship. It may have overlooked its strongest argument for compelling Fish’s testimony. From the record there is little evidence which would support the existence of the relationship. There is no evidence showing who initially contacted Fish or that the initial jailhouse interview was a predicate to future representation. Fish never appeared before the court on Taylor’s behalf. In addition, other counsel was retained.

. Black’s Law Dictionary defines a motion in limine as:
[a] written motion which is usually made before or after the beginning of a jury trial for a protective order against prejudicial questions and statements. Purpose of such motion is to avoid interjection into trial of matters which are irrelevant, inadmissible and prejudicial. ...
Black’s Law Dictionary, p. 526 (Abridged 5th ed. 1983). Although the motion in limine is not specifically authorized in Louisiana it is commonly used in this state.