676 So.2d 189 (1996)
STATE of Louisiana
v.
Raynell BRIGHT.
No. 96-K-0280.
Court of Appeal of Louisiana, Fourth Circuit.
June 12, 1996.
*190 Hans P. Sinha, Capital Defender Division, Orleans Indigent Defender Program, New Orleans, for Defendant-Relator.
Before CIACCIO, ARMSTRONG and WALTZER, JJ.
ARMSTRONG, Judge.
We granted this application for supervisory writs filed by the defendant-relator, Raynell Bright, to determine the correctness of a trial court ruling pertaining to the relator's diary, which the State seeks through a subpoena duces tecum.
On June 15, 1995, the relator was indicted for first degree murder of his six-month-old daughter, a charge to which he has pled not guilty/not guilty by reason of insanity. In furtherance of the investigation of this case, the State obtained search warrants for the relator's cell and for his mother's house, seeking a diary authored by the relator, excerpts of which were quoted in a newspaper article written soon after the victim's death. When these searches failed to reveal the diary's location, the State moved that subpoenas duces tecum be issued to the author of the newspaper article and to defense counsel to produce this diary. On December 20, 1995, counsel filed a motion to quash the subpoena, and after a hearing, the court ruled that defense counsel must either: (1) produce the diary if he has it; (2) disclose to whom he gave it, if he had it and gave it to someone else; or (3) disclose its location if he does not have it but knows where it is. It is from this ruling that the defendant now seeks relief.
The existence of the diary became known shortly after the victim's murder when family members showed it to a newspaper reporter, who then quoted from it in print. The State argued that it was entitled to the production of the diary because it theorized that at some point in the trial, either the guilt or penalty phase, the question of the relator's mental state would be called into question. Pointing to passages quoted in the newspaper article, the State asserted that the diary would shed some light on the relator's mental state, especially as it concerned the victim. The relator argues that his counsel should not have to inform the State about the location or even the existence of this diary because the diary is not discoverable, because the State has no right to issue a subpoena to him, and because the acknowledgement of the diary's location or even its existence would be a violation of the attorney-client privilege.

The Issuance of the Subpoena Duces Tecum
In support of his assertion that the subpoena duces tecum should have been quashed, the relator cites La.C.E. art. 507, which provides:
A. General rule. Neither a subpoena nor a court order shall be issued to a lawyer or his representative to appear or testify in any criminal investigation or proceeding where the purpose of the subpoena or order is to ask the lawyer or his representative to reveal information about a client or former client obtained in the course of representing the client unless the court after a contradictory hearing has determined that the information sought is not protected from disclosure by any applicable privilege or work product rule; and all of the following:
(1) The information sought is essential to the successful completion of an ongoing investigation, prosecution, or defense.

*191 (2) The purpose of seeking the information is not to harass the attorney or his client.
(3) With respect to a subpoena, the subpoena lists the information sought with particularity, is reasonably limited as to subject matter and period of time, and gives timely notice.
(4) There is no practicable alternative means of obtaining the information.
B. Waiver. Failure to object timely to non-compliance with the terms of this Article constitutes a waiver of the procedural protections of this Article, but does not constitute a waiver of any privilege.
C. Binding effect of determination; notice to client. The determination that a lawyer-client privilege is not applicable to the testimony shall not bind the client or former client unless the client or former client was given notice of the time, place, and substance of the hearing and had an opportunity fully to participate in that hearing.
D. Exceptions. This Article shall not apply in habitual offender proceedings when a lawyer is called as a witness for purposes of identification of his client or former client, or in post-conviction proceedings when a lawyer is called as a witness on the issue of ineffective assistance of the lawyer.
The relator argues that the subpoena for the diary should not have issued to counsel because the court first failed to hold a contradictory hearing where the State would be forced to meet all the conditions listed in subpart A. It is true that at the November 22nd hearing on this matter, the State did not address these factors. However, at the December 20th hearing, it appears that the prosecutor's argument may have satisfied most of these factors. First, the State had to show that the information sought was not protected by any privilege or work product rule. The item sought is a diary containing entries predating the murder; there is no indication it was composed in connection with the defense of this case or is a communication between the relator and his counsel. As such, the diary cannot be said to be a work product, nor does it appear that the diary itself is protected by any privilege.
The State then had to show that the information sought was essential to its investigation of the case. The prosecutor argued that because the defendant pled not guilty/not guilty by reason of insanity, his mental state would become a factor in the case. The excerpts from the diary contained in the newspaper articles contain statements concerning the relator's mental state. The prosecutor argued, therefore, that the contents of the diary, apparently written near the time of the murder, would be essential to help the State rebut the relator's planned defense. Thus, the State met this requirement.
There is no indication in the application, nor does the relator argue, that the State's purpose in issuing the subpoena duces tecum for the diary was to harass the relator or his attorney. The subpoena itself, contained in the application, provides for the production of "the defendant's diary and/or journal". As such, it appears that the fourth factor, that the subpoena is precise, limited, and gives adequate notice, has also been met. Finally, the prosecutor testified that the State first tried to obtain this diary through the issuance of search warrants for the relator's cell and his mother's house, but the diary in question was not found. Therefore, the State made a sufficient showing under art. 507 for the issuance of the subpoena duces tecum for the production of the diary from counsel.

The Attorney-Client Privilege
The relator next argues that he should not have to produce the diary or its location because the diary is privileged material and even the production of it would be a violation of the attorney-client privilege. La. C.E. art. 506B states:
B. General rule of privilege. A client has a privilege to refuse to disclose, and to prevent another person from disclosing, a confidential communication, whether oral, written, or otherwise, made for the purpose of facilitating the rendition of professional legal services to the client, as well as the perceptions, observations, and the like, of the mental, emotional, or physical condition *192 of the client in connection with such a communication, when the communication is:
(1) Between the client or a representative of the client and the client's lawyer or a representative of the lawyer.
(2) Between the lawyer and a representative of the lawyer.
(3) By the client or his lawyer, or a representative of either, to a lawyer, or representative of a lawyer, who represents another party concerning a matter of common interest.
(4) Between representatives of the client or between the client and a representative of the client.
(5) Among lawyers and their representatives representing the same client.
(6) Between representatives of the client's lawyer.
As note above, the diary was not made in preparation of the case, and it was not a communication between the relator and his counsel. As such, the diary itself would not be protected by a privilege.
The relator's attorney argues, however, that his production of the diary or its whereabouts would be a violation of the attorney-client privilege because the diary may contain incriminating evidence. In support of this argument, counsel attempts to distinguish State v. Green, 493 So.2d 1178 (La. 1986), cited by the trial court. In Green, the defendant gave his counsel the gun used in the shooting with which he was charged. Counsel then turned the gun over to the State. The defendant eventually obtained new counsel. At trial, the State called original counsel to the stand and questioned him about how he obtained the gun. On appeal of the defendant's conviction, the Court held that counsel did not violate the attorney-client privilege by producing the gun, and that in fact counsel had a duty to produce the gun as it was physical evidence of a crime. The Court noted: "Our holding is strengthened by the fact the gun, as an instrumentality of a crime, could have been seized from the defendant were it still in his possession. La.C.Cr.P. art. 161 (1967). The same item would not have been immune from introduction into evidence merely because it was in the hands of an attorney." Id. at 1183. However, counsel's testimony at trial, that the defendant gave him the gun, was a violation of the attorney-client privilege and as such was inadmissible. The Court noted that the only evidence which tied the gun to the defendant was his former counsel's testimony concerning the defendant giving him the gun. The Court found that although the defendant did not tell counsel that the bundle of items he gave counsel contained the gun, the defendant's act of giving the gun was a communication about which counsel could not testify.
In a case also cited by the trial court, State v. Taylor, 502 So.2d 537 (La.1987), on second rehearing, the Court addressed similar issues. The defendant had met with his attorney and had told him where he could find the gun used in the murder with which he had been charged. The attorney retrieved the gun, but he did not turn it over to the police until some time later when the police, having received a tip that the attorney had the gun, asked him for it. The State sought to introduce the gun and to call the attorney to testify as to how he came in possession of the gun. On review of this ruling, the Supreme Court held that the gun was admissible in that its production was not covered by the defendant's attorney/client privilege. The Court stated that "physical evidence connected to the commission of a crime which has been received or recovered by an attorney on account of his representation of a client is not excluded by virtue of the attorney-client privilege." Id. at 539.
The Court also noted that the communications between the defendant and his counsel, which led to the attorney's retrieval of the gun, would be privileged unless the State showed that they were in furtherance of a future crime or a fraud, including the conspiracy to hide relevant evidence from the State. The Court stated:
Having concluded that the attorney-client privilege is vitiated where the attorney-client relationship is used to further an ongoing or a future crime or fraud, we must now reconsider the procedure for making that determination as detailed on the first rehearing. While it is true that *193 the attorney-client privilege is not itself constitutionally guaranteed, nevertheless it is closely linked to the federal and state constitutional guarantees of effective assistance of counsel. U.S. Const. amend. VI; La. Const. art. 1, Sec. 13. Because of the constitutional interest implicated in the attorney-client privilege, that privilege should not be easily derogated. For this reason, upon reconsideration, we conclude that the procedure set forth on the first rehearing does not afford adequate safeguards to the attorney-client privilege, and, in its stead, the following procedure should be utilized to evaluate whether the crime or fraud exception to the privilege is present.
Generally, questions of admissibility, relevance, and weight of evidence are properly raised at trial on the merits, not by pretrial motions. State v. Tanner, 457 So.2d 1172 (La.1984). In the instant case, defendant challenges the admissibility of communications with his lawyer on the ground that those communications are privileged. However, because of the strong constitutional implications of the attorney-client privilege, "it would serve the orderly administration of justice and further insure the defendant a fair trial if the admissibility of the [attorney-client communications] could be determined in a pretrial proceeding." State v. Tanner, supra, at 1174.
La.Code Crim.P. art. 703 provides that a defendant adversely affected may move to suppress any evidence from use at trial on the ground that it was unconstitutionally obtained. There is no contention that the evidence of the communications between Fish and defendant in the present case was unconstitutionally obtained. Therefore, a literal reading of art. 703 would seem to exclude the use of a motion to suppress to test admissibility of allegedly privileged attorney-client communications. Nevertheless, for the reasons set forth above, we believe that the importance of the attorney-client privilege justifies the use of the motion to suppress to test the admissibility of such communications prior to trial. Thus, pursuant to our authority under La.Code Crim.P. art. 3 to establish procedural guidelines in the absence of specific legislative procedural rules, we hold that a motion to suppress is available to question the admissibility of allegedly privileged attorney-client communications.
Once a defendant has made out a claim that certain communications are subject to the attorney-client privilege pursuant to La.R.S. 15:475 [now C.E. art. 506], the trial court shall hold an evidentiary hearing, see La.Code Crim.P. art. 703(E), in which the burden of proving the admissibility of those communications under an exception to the privilege is on the state as in the case of a confession or evidence seized without a warrant. See La.Code Crim.P. art. 703(D). The question of the standard of proof the state must meet in order to prove the crime or fraud exception to the attorney-client privilege is more problematic. In the instant case, where the controverted communications were allegedly in furtherance of a conspiracy to secrete material evidence, the state urges that it should be required to establish only a prima facie case of the underlying conspiracy in order to vitiate the attorney-client privilege, by analogy to La.R.S. 15:455, the co-conspirator exception to the hearsay rule. Federal courts have similarly held that where the government makes a prima facie showing that the attorney-client relationship was intended to further continuing or future criminal or fraudulent activity, the privilege does not exist. United States v. Dyer, 722 F.2d 174, 177 (5th Cir.1983), and cases cited therein.
Nevertheless, we feel that the prima facie standard of proof does not afford adequate protection to the attorney-client privilege in criminal cases. Because of the importance of the privilege, therefore, we hold that the state must prove by a preponderance of the evidence that the attorney-client relationship was intended to further continuing or future criminal or fraudulent activity in order to vitiate the attorney-client privilege. Our holding is supported by Comment (e) to Article 801 D(3)(b) of the Proposed Evidence Code, which suggests that the appropriate standard of proof to invoke the co-conspirators *194 exception to the rule against hearsay is a preponderance of the evidence. Furthermore, the criminal or fraudulent activity in question must be proved by substantial, independent evidence without considering the allegedly privileged communications. United States v. Shewfelt, 455 F.2d 836, 840 (9th Cir.), cert. denied, 406 U.S. 944, 92 S.Ct. 2042, 32 L.Ed.2d 331 (1972); cf. State v. Carter, 326 So.2d 848 (La.1975); also Comment (f) to Article 801D(3)(b) of the Proposed Code of Evidence.
At the hearing on the admissibility of the attorney-client communications, neither the defendant nor the attorney to whom the allegedly privileged communications were made may be compelled to testify. However, both the defendant and the attorney may testify in support of a motion to exclude privileged attorney-client communications without being subject to examination on other matters. See La.Code Crim.P. art. 703(E). If the defendant does so testify, his testimony cannot be used by the state except for the purpose of impeaching the defendant's testimony at the trial on the merits. Id. Similarly, if after the hearing the trial judge sustains defendant's claim of privilege, the attorney may not be called to the stand at trial, and his testimony at the hearing may not be used for any purpose. However, if the attorney-client privilege is denied at the hearing, the state may call the attorney to the stand at trial, and his testimony at the hearing may be fully used. [footnotes omitted]

State v. Taylor, 502 So.2d at 540-542.[1]
Here, counsel argues that Green is not applicable because the diary is not an instrumentality of the crime. It is true that the diary is not the weapon used in the crime. However, as was the case with the gun in Green and in Taylor, the diary here could have been seized from the defendant. Indeed, the diary would have been seized if it had been at his mother's house or in his cell. The fact that the diary may be with counsel at this point should not make its production by counsel a violation of the attorney-client privilege, if indeed counsel has the diary. Therefore, it appears the trial court correctly ruled that counsel must produce the diary if he has it in his possession, and by extension, he must tell to whom he gave it if he had it but then gave it to someone else.
However, if the relator told counsel where the diary was located, then this communication may have been privileged. If counsel never had the diary, presumably his knowledge of its location came from the relator. As such, it would appear that this confidential communication would be covered by the attorney-client privilege, which could only be waived by the relator, unless the State had showed by a preponderance of the evidence that counsel and the relator conspired to commit a fraudulent act or a crime by moving the diary. Here there has been no such showing, and it is unknown if the State would be able to make such a showing. The item sought by the State is not something that would be immediately apparent by its very nature to be something that counsel would have a duty to produce for the State, such as a murder weapon. Therefore, if indeed the relator told counsel where the diary is located, this communication may not have been made in anticipation of hiding relevant evidence, and as such it might be covered by the attorney/client privilege. In any event, the State has not even attempted to make this showing, and in its absence, any communications from the relator to his counsel concerning the diary's whereabouts remain privileged.

Discovery
The relator finally argues that the evidence contained in the diary is not discoverable by the State under the discovery articles of the Code of Criminal Procedure. La. *195 C.Cr.P. art. 724 provides for the production of documents and tangible objects that are in the defendant's possession and that the defendant intends to use in evidence at trial. Art. 725 provides for the production of the reports of any examinations or tests made in connection with the case, which are in the defendant's possession, and which are either intended for use at trial or "were prepared by a witness whom the defendant intends to call at the trial when such results or reports relate to his testimony." The relator notes that because the diary falls under neither of these categories, it is not discoverable by the State. In addition, he cites art. 728, which provides:
Except as to scientific or medical reports, this Chapter does not authorize the discovery or inspection of reports, memoranda, or other internal defense documents made by the defendant or his attorneys or agents in connection with the investigation or defense of the case; or of statements made by the defendant, or by witnesses or prospective witnesses to the defendant, his agents or attorneys; or of the names of defense witnesses or prospective defense witnesses. (emphasis added)
He contends that art. 728 prohibits the State from discovering if the defendant told counsel the diary's location. It appears that any communications the relator made to counsel concerning the diary's location would not be discoverable under art. 728.
The trial court correctly ruled that counsel must produce the diary if he has it in his possession and or to tell to whom he gave it if he had it but does not have it presently. However, the State has failed to show by a preponderance of the evidence that any communications by the relator to counsel concerning the diary's whereabouts would not be subject to the attorney-client privilege and, as such, the trial court should not have ordered counsel to reveal the diary's location if counsel does not have it but knows of its location only through communications made by the relator. We remand this case for an evidentiary hearing as per State v. Taylor, supra, to determine whether, if counsel does not have the diary in his possession but knows of its whereabouts, such knowledge is only because of a communication made by the relator. If this is found to be the case, then the State will have the opportunity to show by a preponderance of the evidence that this communication between counsel and the relator would be exempt from the attorney-client privilege.
For the foregoing reasons, we affirm the ruling of the trial in part, reverse it in part, and remand for an evidentiary hearing in accordance the views expressed herein.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
NOTES
[1] The trial court here also relied on State v. Edwards, 95-1190 (La. 6/30/95), 657 So.2d 997, where the defendant tried to assert a physician/patient privilege. The defendant contended that the drugs found on him had been obtained through a valid prescription, and the State sought his medical records. On review, the Court held that by raising this defense, the defendant waived this privilege as to any relevant communications, even if the defendant did not intend to introduce the medical records and chose present this defense through only oral testimony.