677 So.2d 603 (1996)
STATE of Louisiana, Appellee,
v.
Gilmer P. HINGLE, Appellant.
No. 28260-KA.
Court of Appeal of Louisiana, Second Circuit.
June 26, 1996.
*605 Paul Henry Kidd, Monroe, for Appellant.
Richard Ieyoub, Attorney General, Karen Godwin, M. Patricia Jones, Ann Evans Whittington, Assistant Attorneys General, Jerry L. Jones, District Attorney, for Appellee.
Before SEXTON, WILLIAMS and STEWART, JJ.
WILLIAMS, Judge.
The defendant, Gilmer Hingle, was indicted by a Ouachita Parish grand jury with one count of public bribery, a violation of LSA-R.S. 14:118. The trial court denied defendant's motions to quash and motion in limine. The defendant was subsequently convicted as charged. The trial court sentenced the defendant to serve two years at hard labor, suspended the sentence and placed the defendant on supervised probation for a period of three years, with a special condition of probation that the defendant serve 180 days in the parish jail. The defendant appeals his conviction. For the following reasons, we affirm.

FACTS
The defendant, Gilmer Hingle, is an attorney who practices in Monroe, Louisiana. The charge of public bribery is a result of his representation of Frank and Irma Feeback, who were charged with the offenses of filing false documents and theft by fraud. The charges against the Feebacks arose out of allegations made by Linda Kay King, a former employee of R & J Auto Sales, a used car dealership owned by the Feebacks. In October 1990, Linda King made a complaint to the Louisiana Used Motor Vehicle and Parts Commission (LUMVPC), alleging that the Feebacks were submitting falsified title applications to the LUMVPC for the purpose of defrauding the state of tax revenue and title and licensing fees.
Louisiana State Trooper Jay Norris investigated Ms. King's complaint and interviewed her on several occasions. Trooper Norris testified that Ms. King informed him that documents were being altered with the knowledge of and at the direction of the Feebacks. Ms. King provided documents that had allegedly been forged or altered. She also implicated Linda Donaldson, the title clerk for R & J Auto Sales, in this scheme. Trooper Norris contacted customers who had purchased cars involved in the alleged forgery scheme. In each case, he found a difference in the amount of the sale price paid by the customer and the amount reported to the state, thus reducing the amount of sales tax that R & J Auto owed to the state. The Trooper also interviewed Ms. Donaldson, who confirmed King's complaint. Ms. Donaldson was also charged with falsifying documents but was later granted immunity for her testimony against the Feebacks. Trooper Norris reported the case to the Ouachita Parish district attorney, who filed bills of information charging the Feebacks with sixteen counts of filing false public records, eight counts of theft by fraud and one count of conspiracy to commit theft. The Feebacks hired the defendant to represent them in their criminal case.
Previously, the Feebacks had received an unsigned letter which was referred to at trial as the "worst nightmare letter." The writer of the letter claimed to have information that would incriminate the Feebacks. The implied intent of the letter was to extort money from the Feebacks. The Feebacks conducted *606 an investigation to determine who wrote the letter and concluded that it was Linda King. Irma Feeback also recorded several of her telephone conversations with King. After the Feebacks were charged, the defendant gave the "worst nightmare" letter and a tape recording of the telephone conversations to Neal Johnson, an assistant district attorney. The defendant discussed with Johnson his suspicion that King was attempting to extort money from the Feebacks. However, the district attorney did not take any action regarding this complaint.
Evidence produced at trial showed that King and her husband were experiencing financial difficulties at the time. Premier Bank and Norwest Financial Louisiana, Inc. had each instituted suit against the Kings for unpaid notes. Additionally, the Kings owed $1,211.04 on a Central Bank credit card. The defendant testified that Ms. King contacted him and asked for a meeting, during which King implied that if the Feebacks paid off her debts she would not testify against them. King also denied telling the investigators that she had any personal knowledge of who was responsible for falsifying documents. Ms. King did not explicitly threaten the defendant at the time. However, the defendant testified that he understood that if these debts were not paid, she would testify against the Feebacks.
Following this meeting, the defendant prepared two affidavits. In the first, the Feebacks agreed not to hold Ms. King liable for any harm she may have caused them, and not to seek criminal or other prosecution against Ms. King. The affidavit also stated that Ms. King would aid in the Feebacks' defense and testify as to the truth in exchange for the Feebacks providing "financial aid" to her by assuming her debts at Norwest Financial, Premier Bank, and Central Bank. This affidavit was signed by Frank and Irma Feeback on April 6, 1991.
In the second affidavit, Ms. King declared that the Feebacks never requested or directed her or any other person to forge or falsify documents. She further stated that Donaldson bragged about forging or falsifying motor vehicle documents. Ms. King also declared that she identified various motor vehicle documents as being the forgeries of Donaldson in the presence of Trooper Norris. King signed this affidavit on April 7, 1991.
Following the signing of these affidavits, the defendant arranged for the Kings' debts to be assigned to Creative Mortgage Funding, Inc., a Louisiana corporation incorporated by the defendant for the use of his client Dan Marshall. According to Marshall, the entity was merely a "paper corporation" that was never utilized due to a lack of funding. However, Marshall consented when the defendant asked to use the corporation to execute a loan.
Brenda Hicks, the defendant's secretary and legal assistant at the time, testified that the defendant instructed her to pick up money from the Feebacks, purchase cashier's checks under the name of Creative Mortgage Funding, and issue the checks to Premier Bank, Norwest Financial, and Central Bank. Ms. Hicks then delivered the cashier's checks to the financial institutions as payment of the Kings' debts. Overall, Creative Mortgage Funding assumed $6,653 of the Kings' debts. At the time of the defendant's trial, Ms. King had not made any loan payments to Creative Mortgage Funding.
The defendant then filed a motion to quash the Feebacks' indictments and attached a copy of Ms. King's April 7, 1991 affidavit. In response, assistant district attorney Johnson investigated the motive behind Ms. King's affidavit, and discovered evidence linking the defendant to the payment of the Kings' debts. When Johnson confronted the defendant with this evidence, he stated that a friend's corporation had purchased the loans in a legitimate transaction. However, the defendant admitted that the Kings had not made any payments on the loan. The defendant also told Johnson, "If you as prosecutors can offer immunity to a witness to get him to cooperate, why can't I offer him money?" Subsequently, a Ouachita Parish grand jury indicted the defendant with the offense of public bribery.
Prior to trial, the defendant filed a motion to quash the indictment and a motion in limine, both of which addressed the issue of attorney-client privilege and the potential effect *607 on his ability to present a defense. The trial court denied the motions without a hearing. The trial court declined to rule on the issues raised in the motion in limine, stating that an advance determination would require duplicative hearings, since the issues could be addressed as they arose at trial. Regarding the motion to quash, the trial court found that even if testimony the defendant desired to present was excluded at trial because of the attorney-client privilege, this fact alone would not mandate the quashing of the indictment.
The defendant sought supervisory review of the trial court's ruling from this court, which declined to exercise its supervisory authority. State v. Hingle, 27,176-KW (La. App. 2d Cir. 10/27/94). The Louisiana Supreme Court also denied the defendant's request for supervisory review. State v. Hingle, 644 So.2d 1045 (La.1994). After a trial, the defendant was convicted as charged. The trial court sentenced the defendant to serve two years at hard labor, suspended the sentence and placed him on supervised probation for a period of three years. As a special condition of probation, the trial court ordered the defendant to serve 180 days in the parish jail. The defendant filed a motion for new trial which was denied. The defendant appeals.

DISCUSSION

Specific Intent
The defendant argues the trial court erred in denying his motion for a new trial. Defendant asserts that he lacked the specific intent to commit public bribery because he involuntarily submitted to a witness' extortion demands made upon his clients.
One of the essential elements of public bribery is a conscious knowing intent to influence a person's conduct. Louisiana State Bar Association v. Pitard, 462 So.2d 178 (La.1985). Specific intent is a state of mind and need not be proved as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La. 1982); State v. Doby, 540 So.2d 1008 (La. App. 2d Cir.), writ denied, 544 So.2d 398 (La.1989). Specific intent exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act. State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990); State v. McCray, 621 So.2d 94 (La. App. 2d Cir.1993). The determination of whether the requisite intent is present in a criminal case is for the trier of fact. A court reviewing the correctness of such a finding should consider the evidence in a light most favorable to the prosecution and must determine if the evidence is sufficient to convince a reasonable fact finder of the defendant's guilt beyond a reasonable doubt. State v. Huizar, 414 So.2d 741 (La.1982).
In order to sustain a conviction for public bribery, the state must prove that the defendant gave something of value to a witness with the specific intent to influence that person's testimony.[1] Here, the defendant became aware that King was to be a witness against the Feebacks after their arrest. The state proved that the defendant facilitated the payment of $6,653 of King's debts through Creative Mortgage Funding. The defendant admitted that he used the corporation to "cover up" or "camouflage" the transactions and to satisfy his law partner, who objected to the transactions. However, the defendant testified that his intent in making the payments was not to influence King's testimony, but rather to "help her out." During the trial, the defendant also attempted to prove that King had never told state investigators that she possessed personal knowledge of the extent of the Feebacks' involvement in the fraudulent scheme. The defendant maintains that this fact is significant because it proves that the payments were not made to influence King to change her testimony.
*608 The evidence presented by the state sufficiently established the defendant's specific intent to influence King's conduct. Whether or not King had personal knowledge that the Feebacks were involved in a fraudulent scheme, the defendant intended to influence her testimony by paying her debts. Such intent is also evidenced by the affidavits signed by King and the Feebacks. Each affidavit specifically states that the agreement to make payments would be null and void if King failed to testify "truthfully on the Feebacks' behalf." Furthermore, the defendant attempted to camouflage or cover up the loan payments by having Creative Mortgage Funding, a paper corporation, assume King's debts. The trial court could reasonably infer defendant's specific intent to influence King's conduct from the circumstances of the transactions and the defendant's effort to disguise the debt payments.
The defendant also urges this court to create a jurisprudential rule which recognizes the defense of extortion to the charge of public bribery. We decline to do so. Extortion is defined as the communication of threats to another with the intent thereby to obtain anything of value or any advantage. A threat to accuse the individual threatened or any member of his family of any crime shall be sufficient to constitute extortion. LSA-R.S. 14:66. In his brief, defendant directs this court's attention to laws in four states which allegedly allow a defense to bribery where the person gives a bribe in response to an extortioner's demand. Hawaii R.S. 710-1040; Kentucky R.S. 521.020(2); NY Penal Code Sec. 200.05; Oregon R.S. 162.035. However, further review of these states' criminal codes reveals that the statutes allow the defense of extortion only to bribery of a public official, and not to bribery of a witness. Unlike Louisiana's Criminal Code, each of these states has separate statutes prohibiting bribery of a public official and a witness. Thus, none of the states provide a statutory extortion defense to bribery of a witness. Hawaii R.S. 710-1070; Kentucky R.S. 524.020; NY Penal Code Sec. 215; Oregon R.S. 162.265. The federal cases cited by the defense also involve the bribery of public officials and not of witnesses. The defendant does not cite any other authority to support his defense of extortion in this type of case.
Moreover, even if we were to recognize extortion as a defense to bribery of a witness, the facts of this case would not support the defendant's argument. King did not threaten the defendant or the Feebacks with any physical harm or violence. Although King impliedly threatened to accuse the Feebacks of a crime, she did not threaten to implicate the defendant in any offense. Consequently, the defendant failed to establish that he was a victim of extortion.
The defendant also contends that he was forced to advise his clients to submit to King's extortion demands because the district attorney failed to take action when shown evidence of her demands. However, the defendant could have protected his clients' interests with alternative legal means, which included using the evidence of King's extortion to impeach her testimony at his clients' trial, and reporting King's extortion demands to the state police, who were investigating the Feebacks.
When considered in the light most favorable to the prosecution, there is sufficient evidence in the record to support the trial court's finding that the defendant possessed the specific intent to influence the conduct of a witness when he arranged the payment of her debts. This assignment of error lacks merit.

Motion to Quash
The defendant argues the trial court denied him the right to procedural due process when it denied his fourth motion to quash and his motion in limine without an evidentiary hearing. The motion to quash was based on the contention that subjecting the defendant to trial would necessarily require him to question former clients on matters he believed were protected by their attorney-client privilege.
A defendant's Sixth Amendment right to present a defense is not absolute. Roussell v. Jeane, 842 F.2d 1512 (5th Cir. 1988). The Sixth Amendment gives a defendant the right to have his witnesses' non-privileged testimony heard, but does not carry *609 the right to displace a proper claim of privilege. State v. Mattheson, 407 So.2d 1150 (La.1981), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983). The right to present witnesses may be limited to accommodate "other legitimate interests in the criminal trial process." Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). For example, a defendant is not entitled to present evidence that is cumulative or immaterial, and the defendant's right to call a witness does not overcome a witness' Fifth Amendment privilege against self-incrimination. Roussell v. Jeane, supra. The right to present witnesses should not be construed as disapproving testimonial privileges, including the attorney-client privilege. Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).
In the present case, the defendant anticipated that his former clients would invoke and refuse to waive their attorney-client privilege. The defendant also asserts that the attorney-client privilege would prevent him from testifying on his own behalf and thus preclude him from presenting a defense. The defendant's inability to present testimony that is protected by the attorney-client privilege does not violate his Sixth Amendment right to present a defense or his Fourteenth Amendment right to due process. Accordingly, the trial court did not err in denying the defendant's motion to quash predicated on his inability to present a defense due to the attorney-client privilege.
The defendant also contends he was entitled to an evidentiary hearing on the motion to quash. The defendant's motion did not specify the particular testimony that he believed to be protected by the attorney-client privilege. As the trial court correctly observed in its written reasons, at the time the motion to quash was filed, the court could not know if the defendant's anticipated problems would materialize. Moreover, appropriate procedural protection was available in the event problems arose during the course of the trial. Therefore, we cannot say the trial court abused its discretion in declining to hold an evidentiary hearing on the defendant's motion to quash.

Motion in Limine
The defendant argues that he was prejudiced by the trial court's refusal to conduct a hearing on the existence of the attorney-client privilege and the potential exclusion of testimony protected under the privilege. The defendant contends that he was unable to prepare a definite trial strategy because he did not know what testimony would be admissible or whether he would be able to testify.
In support of his argument, the defendant relies on State v. Taylor, 502 So.2d 537 (La. 1987), in which the supreme court held that once a defendant establishes that certain communications are subject to the attorney-client privilege, the trial court shall hold an evidentiary hearing. However, Taylor may be distinguished because the defendant in that case filed a motion to suppress his conversation with an attorney. LSA-C.Cr.P. Art. 703(E) specifically provides for an evidentiary hearing on a motion to suppress when a defendant alleges facts that would require the granting of relief. Here, the defendant filed a motion in limine and the Code of Criminal Procedure does not contain a corresponding provision requiring a hearing on that type of motion.
Furthermore, in Taylor, the evidence in controversy was specifically identified as the murder weapon and the attorney's testimony concerning the weapon. In the present case, the defendant did not specify any particular testimony. At the time the motion in limine was filed, the perceived problems were speculative. In order to decide the admissibility of testimony, the trial court would have had to determine whether the state or defendant would actually call the witness, whether an attorney-client relationship existed, the circumstances surrounding the alleged communication between the attorney and client, whether the client expressly or impliedly waived the privilege and whether the crime or fraud exception to the privilege applied. This exercise would have been tantamount to a duplicate trial. Under the circumstances, we cannot say that the trial court abused its discretion in declining to conduct an evidentiary hearing to determine if any relevant testimony should have been excluded under *610 the attorney-client privilege. These assignments of error lack merit.
We have examined the record for error patent and found none.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] LSA-R.S. 14:118 defines public bribery as the giving or offering to give, directly or indirectly, anything of apparent present or prospective value to any of the following persons, with the intent to influence his conduct in relation to his position, employment, or duty: ... (d) Witness, or any person about to be called as a witness, upon a trial or other proceeding before any court....